1  KEVIN G. McCURDY (SBN 115083)
   MARYAM GILAK (SBN 218325)
2  McCURDY & FULLER LLP
   4300 Bohannon Drive, Suite 240
3  Menlo Park, California 94025
   Telephone: (650) 618-3500
4  Facsimile: (650) 618-3599        E-filing
   E-mail:  kevin.mccurdy@mccurdylawyers.com
5          maryam.gilak@mccurdylawyers.com

6  Attorneys for Defendant
   LIBERY MUTUAL FIRE INSURANCE
7  COMPANY

FILED

FEB 2 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

8

9                    UNITED STATES DISTRICT COURT        ADR

10                   NORTHERN DISTRICT OF CALIFORNIA

11  GEGA SAENZ,                           CASE NO. C08-01205 EMC

12         Plaintiff,                     **DEFENDANT LIBERTY MUTUAL FIRE
                                          INSURANCE COMPANY'S NOTICE OF
13     v.                                 REMOVAL OF CIVIL ACTION UNDER
                                          28 U.S.C. § 1441(b)[DIVERSITY
14  LIBERTY MUTUAL FIRE INSURANCE         JURISDICTION]**
    COMPANY, and DOES 1 through 20,
15  inclusive,

16         Defendants.

17

**TO THE CLERK OF THE ABOVE ENTITLED COURT:**

        PLEASE TAKE NOTICE that defendant Liberty Mutual Fire Insurance Company

21  ("Liberty Mutual"), pursuant to 28 U.S.C. § 1446, hereby removes to this Court the State action

22  described below:

23      1.      Liberty Mutual is a defendant in the civil action filed on or about January 17, 2008,

24  in the Superior Court of the State of California, County of Alameda, case number HG08366535,

25  entitled *Saenz v. Liberty Mutual Fire Insurance Company*.  Service of the summons and complaint

26  on Liberty Mutual took place on January 30, 2008.

27      2.      The complaint, summons, civil case cover sheet, initial case management order,

28  notice of judicial assignment, alternative dispute resolution information packet, proof of service of

27260                                   - 1 -

**Defendant Liberty Mutual Fire Insurance Company's Notice Of Filing Notice Of Removal**

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

NOTICE OF ASSIGNMENT TO MAGISTRATE JUDGE SENT
C0-44 SENT

1  complaint on Liberty Mutual and Liberty Mutual's answer to plaintiff's complaint constitute all

2  the papers, pleadings and orders filed in the State Court. A copy of all said papers, pleadings and

3  orders are attached hereto as Exhibit 1 and incorporated herein as part of this notice.

4     3.     This action is a civil action of which this Court has original jurisdiction under 28

5  U.S.C. § 1332, and is one that may be removed to this Court by Liberty Mutual pursuant to the

6  provisions of 28 U.S.C. § 1441(b), in that it is a civil action, wherein the matter in controversy

7  appears to exceed the sum of $75,000 exclusive of interest and costs, and is between citizens of

8  different states.

9     4.     The complaint alleges, and Liberty Mutual is informed and believes, that plaintiff

10  Gega Saenz is a resident of the State of California and was a resident of the State of California at

11  all times pertinent to the matters at issue in this action.

12     5.     At all times pertinent to this action, Liberty Mutual was, and still is, a corporation

13  incorporated under the laws of the Commonwealth of Massachusetts, and its principal place of

14  business is located in the Commonwealth of Massachusetts.

15     6.     Upon information and belief, the matter in controversy exceeds the sum of $75,000

16  exclusive of interest and costs. In the complaint, plaintiff alleges breach of an insurance contract

17  with $255,000 limits of liability. Plaintiff also alleges breach of the covenant of good faith and

18  fair dealing. Plaintiff further alleges she has "been deprived of timely payment of sums due to her,

19  and has suffered anxiety, worry, mental and emotional distress and other incidental and out-of-

20  pocket expenses, causing Plaintiff to suffer general and special damages". (Exhibit 2 at ¶ 25).

21  Plaintiff also seeks punitive damages. (*Id.* at ¶ 26.)

22     7.     Based on the foregoing, this Court has jurisdiction of this matter pursuant to 28

23  U.S.C. 1332(a) and this request is timely. Therefore, Liberty Mutual requests removal of this

24  action based on diversity jurisdiction.

25     8.     A Notice of Removal shall be filed contemporaneously in the Alameda County

26  Superior Court to which this matter was assigned. A copy of the Notice of Removal to the Clerk

27  of the Alameda County Superior Court and proof of service evidencing service upon plaintiff's

28  counsel of record is attached hereto as Exhibit 3.

1    Dated: February 28, 2008                          McCURDY & FULLER LLP

2

3

4                                                      KEVIN G. McCURDY
                                                       MARYAM GILAK
5                                                      Attorneys for Defendant
                                                       LIBERTY MUTUAL FIRE INSURANCE
6                                                      COMPANY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27260                                    - 3 -

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

1  GARY S. ROSE, Calif. Bar #83744
   HEATHER E. GIBSON, Calif. Bar # 240938
2  FLYNN, ROSE & PERKINS
   59 North Santa Cruz Avenue, Suite Q
3  Los Gatos, California 95030
   (408) 399-4566
4
   Attorneys for Plaintiff
5  GEGA SAENZ

6

**ENDORSED
FILED
ALAMEDA COUNTY**

JAN 1 7 2008

CLERK OF THE SUPERIOR COURT
By Cecilia Anchundo, Deputy

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF ALAMEDA

10                      (UNLIMITED JURISDICTION)

11  GEGA SAENZ,                          )  Case No.
                                         )
12                                       )        ᴿᴳ 0 8 3 6 6 5 3 5
                    Plaintiff,           )
13                                       )  COMPLAINT
    vs.                                  )  (Breach of Contract, Breach of the Covenant of
14                                       )  Good Faith and Fair Dealing)
    LIBERTY MUTUAL FIRE INSURANCE        )
15  COMPANY, and DOES 1 through 20,      )
    inclusive,                           )
16                                       )
                    Defendants.          )
17                                       )
                                         )
18  ────────────────────────────────────

19          Plaintiff alleges:

            <u>FACTS COMMON TO ALL CAUSES OF ACTION</u>

20          1.      Plaintiff is, and at all times mentioned herein was, a resident of the City of San

21  Leandro, County of Alameda, State of California

22          2.      Plaintiff is informed and believes and thereon alleges that Defendant Liberty

23  Mutual Fire Insurance Company, (hereinafter referred to as "LIBERTY MUTUAL" is a

24  Wisconsin corporation, licensed to practice and carry out the business of insurance in the State of

25  California.

26          3.      Total damages related to the loss complained of herein exceed the jurisdictional

27  minimum of this Court.

28

1      4.     The true names and capacities, whether individual, corporate or otherwise of

2   Defendants DOES 1 through 20, inclusive, are unknown to Plaintiff at this time. Plaintiff is

3   informed and believes and thereon alleges that each of the Defendants designated as a DOE is

4   responsible in some manner for the events and happenings herein referred to, and caused injury

5   and damage proximately thereby to Plaintiff as herein alleged.

6      5.     On or about February 28, 2006, Defendant renewed a policy issued Plaintiff,

7   number FN2-261-933644-0067, which included coverage for damage to Plaintiff's rental

8   dwelling, located at 2370 West Avenue 133, in San Leandro, California. Plaintiff is informed and

9   believes the Defendant failed to deliver the original policy to her, containing its terms, conditions

10   and limitations. Subsequent to the loss which is the subject of this suit, she obtained a partial

11   copy of said policy, which is attached hereto as **Exhibit 1.**

12      6.     Plaintiff had rented 2370 West Avenue property to two individuals, beginning on or

13   about August of 2004. At the time, a joint walkthrough took place where all damages to the unit

14   were noted. Other than a small stain on the floor of an upstairs bath, no water or other damage

15   was identified, and the unit was in excellent condition.

16      7.     On or about July 31, 2006, Plaintiff conducted a walkthrough inspection of the unit

17   as the tenants were vacating it. During the walkthrough, Plaintiff noticed extensive water damage

18   to the vinyl floor in the upstairs bathroom for the first time. Some weeks before they vacated the

19   unit, the tenants had also informed Plaintiff that damage had occurred to a wall below the

20   bathroom, based on a single occurrence. Plaintiff is informed and believes the same event which

21   damaged the lower wall also damaged the upstairs bathroom.

22      8.     The policy purchased by Plaintiff insured her against the peril of damage caused by

23   water which escapes from within any plumbing system or household appliance, with a limit of

24   $255,000.00 per occurrence.

25      9.     Plaintiff timely notified LIBERTY MUTUAL of her claim on or about August 10,

26   2006.

27      10.    On or about August 15, 2006, Defendant hired American Leak Detection (ALD) to

28   inspect the plumbing systems at the above-described unit had incurred. ALD determined that the

shower riser and toilet seal appeared to leak, and that under high pressure, some leakage occurred in the shower door. ALD did not opine that these leaks had led to the observed damage; Plaintiff's son-in-law, a contractor with over 20 years of experience repairing water-damaged structures, judged that the minor leaks identified by ALD, even if they had occurred, could not possibly explain the scope of the discovered water loss, nor was it consistent with the tenants' report of a single episode of water which damaged the wall just below the bath.

11.    On or about September 13, 2006, Plaintiff received a letter from LIBERTY MUTUAL denying her claim based on various exclusions including an exclusion for repeated leakage and seepage of water. LIBERTY MUTUAL's reasons for denial were not reasonably based on any investigation or analysis of the facts, and were not supported by ALD's analysis.

12.    On or about March 15th, 2007, and March 16th, 2007, Mrs. Saenz sent communications to LIBERTY MUTUAL outlining her concerns and questions about receiving payment in order to repair her damaged property. Mrs. Saenz did not receive any response other than a reservation of rights letter on or about March 27, 2007, which failed to address any of her substantive questions or concerns.

13.    On June 28, 2007, Plaintiff and her son-in-law, Tom Pearson, drafted a letter to LIBERTY MUTUAL advising it of Plaintiff's situation, and providing supporting evidence establishing her entitlement to coverage for the above described property damage. LIBERTY MUTUAL failed to adequately respond to this communication.

14.    The Defendant thereafter requested an Examination Under Oath of Mrs. Saenz, which took place on October 2, 2007. Mrs. Saenz truthfully and fully responded to all the inquiries of LIBERTY MUTUAL. On or about December 3, 2007, LIBERTY MUTUAL re-denied her claims, on the same basis as it had done so earlier (**Exhibit 2**).

15.    Plaintiff contends, by reason of its failure to deliver the relevant policy terms and conditions to her, that Defendant's decision to deny this claim is not only wrong, it is estopped to rely upon the exclusions purporting to justify its denial of the claim, as a consumer in the Plaintiff's condition could not reasonably anticipate that water damage, which was discovered for the first time within two years of the tenants taking possession, and which was reported to be the

1   result of a single episode, would nonetheless be excluded under the policy because of alleged

2   deficiencies in the plumbing systems of the home. Moreover, Plaintiff specifically disputes that

3   the observed damages were the result of long-term leaks, and were, instead, the result of some

4   episode of flooding in the upstairs bath, brought about by some defect, or the neglect, error or

5   omission of the residents.

6       16.    Plaintiff has fully complied with the terms and conditions imposed upon her by the

7   policy of insurance identified herein. As a result of Defendant's unreasonable and wrongful

8   conduct, Plaintiff was required to retain the services of legal counsel; Plaintiff seeks her

9   reasonable attorney's fees under Brandt v. Superior Court.

10      17.    In willful disregard of its obligations, duties, and representations to Plaintiff,

11  Defendant failed to properly investigate and thereafter effectuate the prompt, fair and equitable

12  settlement of this claim, notwithstanding the fact that liability for said claim is clear, and has

13  failed to act in good faith responding to Plaintiff's claim.

14  PLAINTIFF, FOR A FIRST COUNT AGAINST DEFENDANT, FOR BREACH OF
    CONTRACT, ALLEGES:
15

16      18.    Plaintiff realleges and incorporates herein by reference each and every allegation of

17  Paragraphs 1-17, inclusive of this Complaint.

18      19.    Defendant, by failing to make prompt and full payment under the policy, breached

19  said insurance contract.

20      20.    As a direct and proximate result of the breach of contract by said Defendant,

21  Plaintiff has been injured in a sum representing the benefits due her, plus interest thereon, from the

22  date said payments should have been made under the terms of the policy.

23      21.    As a further direct and proximate result of the breach of contract by Defendant,

24  Plaintiff has suffered and will continue to suffer consequential damages in an amount to be shown

25  according to proof at trial.

26  PLAINTIFF, FOR A SECOND COUNT AGAINST DEFENDANT, FOR BREACH OF THE
    DUTY OF GOOD FAITH AND FAIR DEALING, ALLEGES:
27

28      22.    Plaintiff realleges and incorporates herein by reference each and every allegation of

1    Paragraphs 1-21, inclusive of this Complaint.

2        23.    In committing the acts and omissions as further set forth in this Complaint,

3    Defendant breached its duty of good faith and fair dealing owed to Plaintiff through the adoption

4    of techniques and practices designed to frustrate Plaintiff's efforts to obtain insurance benefits,

5    including, without limitation, requesting multiple copies of the same records, requesting

6    information not reasonably necessary to the adjudication of her claim, and failing to fairly evaluate

7    the evidence associated the loss.

8        24.    Plaintiff is informed and believes and thereon alleges that Defendant breached the

9    duty of good faith and fair dealing by committing other acts and omissions of which Plaintiff is

10   presently unaware. Plaintiff will seek leave of this Court to amend this Complaint at such time as

11   she discovers the other acts and omissions of said Defendant, constituting such breach.

12       25.    As a direct and proximate result of the aforementioned wrongful conduct, Plaintiff

13   has been deprived of timely payment of the sums due to her, and has suffered anxiety, worry,

14   mental and emotional distress, and other incidental damages and out-of-pocket expenses, causing

15   Plaintiff to suffer general and special damages in an amount to be proved at trial, but in all events,

16   greater than the jurisdictional minimum of this Court.

17       26.    Defendant's failure to provide the promised coverages was done with a conscious

18   disregard for Plaintiff's rights, such as to constitute oppression, fraud, or malice under California

19   Civil Code §3294, entitling Plaintiff to exemplary damages in an amount appropriate to deter or set

20   an example of said Defendant.

21       WHEREFORE, Plaintiff prays judgment against Defendant, as follows:

22       (1)    For the amount of the benefits due pursuant to the contract of insurance, according

23           to proof at trial;

24       (2)    For interest on the payments not made, from and after the dates at which such

25           payments should have been made;

26       (3)    For general damages according to proof;

27       (4)    For special damages according to proof;

28       (5)    For exemplary damages in an amount appropriate to deter or set an example of

1          Defendant;

2    (6)    For prejudgment interest on the damages alleged herein as allowed by law;

3    (7)    For attorneys' fees and costs of suit incurred herein; and

4    (8)    For such other and further relief as the Court may deem just and proper.

5    DATE: January 15, 2008                          FLYNN, ROSE & PERKINS

6

7                                        By

8                                           GARY S. ROSE
                                            Attorney for Plaintiff GEGA SAENZ
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RENEWAL

**LIBERTY MUTUAL**
**FIRE INSURANCE COMPANY, BOSTON, MASSACHUSETTS**
The following declarations are made a part of the Policy numbered below, and supersede any previous declarations.

**LIBERTYGUARD**
FIRE INSURANCE POLICY
DECLARATIONS

POLICY NUMBER

| FN2-261-933644-0067 | THESE DECLARATIONS EFFECTIVE | 02/28/2006 |
|---|---|---|

| SALES OFF | SALES REP. | N/R | 1st YR |
|---|---|---|---|
| 620 | 2287 | 2 | 1985 |

Described Location: The Described Location covered by this policy is at the named insured's mailing address unless otherwise stated:

NAMED INSURED AND MAILING ADDRESS

JOHN N SAENZ
GEGA ANN SAENZ
2366 WEST AE 133
SAN LEANDRO CA 94577

2368 2370 W 133RD AVE
SAN LEANDRO CA 94578

For service, call or write your Liberty Mutual Office at:
201 NORTH CIVIC DR STE 130
WALNUT CREEK CA 94596
925-935-8460
CLAIMS: 800-225-2467

POLICY PERIOD: 1  Years From  02/28/2006  To  02/28/2007    12:01A.M. STANDARD TIME AT THE DESCRIBED LOCATION

ENDORSEMENTS: When these declarations are issued to amend the Policy, the amendment is:

THIS INSURANCE APPLIES TO THE DESCRIBED LOCATION, COVERAGE FOR WHICH A LIMIT OF LIABILITY IS SHOWN AND PERILS INSURED AGAINST FOR WHICH A PREMIUM IS STATED.

| PERILS INSURED AGAINST | AMOUNT | RATE | PREMIUM | | IF THESE DECLARATIONS CONSTITUTE AN AMENDMENT TO THIS POLICY | | |
|---|---|---|---|---|---|---|---|
| | | | If paid in full at inception | At inception & anniversary if paid in installments | Current Premium Adjustment | Increase or Decrease in each subsequent installment | Total premium adjustment until expiration of policy |
| FIRE | $ 255,000 | | $ 410 | | | | |
| SPECIAL FORM | $ 255,000 | | $ 156 | | | | |
| ORDINANCE OR LAW | | | .51 | | | | |
| | | TOTAL(S) | $ 617 | | | | |

| COVERAGE | COVERAGES PROVIDED AND DESCRIPTION OF PROPERTY LOCATED AS STATED ABOVE |
|---|---|
| $ 255,000 | A·DWELLING |

| FORM AND ENDORSEMENTS MADE PART OF THIS POLICY AT TIME OF ISSUE: | 2344 | | FMHO-4152 R2 |
|---|---|---|---|
| FMHO-2942 | FMHO-2883 R1 | FMHO-2146 R1 | DP-3 9/83 |
| FMHO-2180 R3 | FMHO-2339 R1 | HO 277 04/84 | |

Dexter R. Legg
SECRETARY

Edmund F Kelly
PRESIDENT

Countersigned  02/28/2006

FMHO 546 8/86

| DEDUCTIBLES | | | | | | | PROTECTION STATEMENT | | | CONSTRUCTION | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fam-ilies | All Perils | Wind & Hail | All Other | Terri-tory | Sea-coast | Wind Storm | Not More than Indicated feet from Hydrant or Fire Well | Not more than Indicated miles from Fire Dept. | | | | % Frame | Protection Class or Grade | Sea-sonal | Ap-proved Roof |
| 2 | 250 | | | | | | 500 | 3 | | FRAME | | | 02 | | NO |
| Owner Occupied | Co Ins. | Apartments | Risk Card Number | | Inside City Limits - Inside Protected Suburban Area - Inside Fire District | | | | | | Premium GROUPS | | | Year Built | |
| NO | | | | | SAN LEANDRO | | | | | | | | | 1988 | |

EXHIBIT

1

ALL-STATE LEGAL®

RENEWAL

**LIBERTY MUTUAL**
FIRE INSURANCE COMPANY, BOSTON, MASSACHUSETTS

LIBERTYGUARD
FIRE INSURANCE POLICY
DECLARATIONS

The following declarations are made a part of the Policy numbered below, and supersede any previous declarations.

POLICY NUMBER

| FN2-261-933644-0067 | THESE DECLARATIONS EFFECTIVE | 02/28/2006 |
| --- | --- | --- |

| SALES OFF | SALES REP. | NR | 1st YR |
| --- | --- | --- | --- |
| 620 | 2287 | 2 | 1985 |

NAMED INSURED AND MAILING ADDRESS

JOHN M SAENZ
GEGA ANN SAENZ
2366 WEST AE 133
SAN LEANDRO CA 94577

Described Location: The Described Location covered by this policy is at the named insured's mailing address unless otherwise stated:

2368 2370 W 133RD AVE
SAN LEANDRO CA 94578

For service, call or write your Liberty Mutual Office at:
201 NORTH CIVIC DR STE 130
WALNUT CREEK CA 94596
925-935-8460
CLAIMS: 800-225-2467

(CONTINUED FROM PREVIOUS PAGE)

| DEDUCTIBLE | $ | 250 | | IN CASE OF LOSS UNDER THIS POLICY WE COVER ONLY THAT PART OF THE LOSS OVER THE DEDUCTIBLE STATED. |
| --- | --- | --- | --- | --- |

SPECIAL STATE PROVISIONS:
YOUR POLICY DOES NOT CONTAIN EARTHQUAKE COVERAGE.   FOR A PREMIUM OF   $   956
YOU MAY PURCHASE DWELLING COVERAGE OF $ 255,000.   SEE THE ENCLOSED FNHO-2180 FOR DETAILS.

MORTGAGEE 1:
FREMONT BANK
PO BOX 7295
FREMONT CA 94537

BILLING REQUIREMENTS:
DECLARATION TO MORTGAGEE
BILL TO MORTGAGEE
FUTURE BILL TO MORTGAGEE

Countersigned 02/28/2006

| Fam-ilies | DEDUCTIBLES | | | | Terri-tory | Sea-coast | Wind Storm | PROTECTION STATEMENT | | CONSTRUCTION | % Frame | Protection Class or Grade | Sea-sonal | Ap-proved Roof |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | All Perils | Wind & Hall | All Other | | | | | Not More than Indicated feet from Hydrant or Fire Well | Not more than indicated miles from Fire Dept. | | | | | |
| 2 | 250 | | | | 055 | | | 500 | 3 | FRAME | | 02 | | NO |
| Owner Occupied | Co Ins. | Apartments | Risk Card Number | | | | Inside City Limits - Inside Protected Suburban Area - Inside Fire District | | | Premium GROUPS | | | Year Built | |
| NO | | | | | | | SAN LEANDRO | | | | | | 1988 | |

**REGIONAL**

**LIBERTY MUTUAL**
**FIRE INSURANCE COMPANY, BOSTON, MASSACHUSETTS**
The following declarations are made a part of the Policy numbered below, and supersede any previous declarations.

**LIBERTYGUARD**
**FIRE INSURANCE POLICY**
**DECLARATIONS**

POLICY NUMBER

| FN2-261-933644-0067 | THESE DECLARATIONS EFFECTIVE | 02/28/2006 | SALES OFF. 620 | SALES REP. 2287 | N/R 2 | 1st YR 1985 |

NAMED INSURED AND MAILING ADDRESS

JOHN M SAENZ
GEGA ANN SAENZ
2366 WEST AE 133
SAN LEANDRO CA 94577

Described Location: The Described Location covered by this policy is at
the named insured's mailing address unless otherwise stated:

2368 2370 W 133RD AVE
SAN LEANDRO CA 94578

For service, call or write your Liberty Mutual Office at:
201 NORTH CIVIC DR STE 130
WALNUT CREEK CA 94596
925-935-8460
CLAIMS: 800-225-2467

PRU NUM:          AGT NUM:          AGT OFF:     DIST CHAN:     APT:     Countersigned 02/28/2006          FM40 546 8/88

| | DEDUCTIBLES | | | | | | PROTECTION STATEMENT | | CONSTRUCTION | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fam-ilies | At Perils | Wind & Hail | All Other | Terri-tory | Sea-coast | Wind Storm | Not More than indicated feet from Hydrant or Fire Wall | Not more than indicated miles from Fire Dept. | | | % Frame | Protection Class or Grade | Seasonal | Approved Roof |
| 2 | 250 | | | 055 | | | 500 | 3 | FRAME | | | 02 | NO | |

| Owner Occupied | Co Ins. | Apartments | Risk Card Number | Inside City Limits - Inside Protected Suburban Area - Inside Fire District | | | Premium GROUPS | Year Built |
|---|---|---|---|---|---|---|---|---|
| NO | | | | SAN LEANDRO | | | | 1988 |

| TOTAL PREM | INSTALL-MENT | C O V A | DWELLING AMT | FIRE PREM | C O V B | GARAGE | F PREM | OUT BLDG | F PREM | C O V C | PERS PROP AMT | F PREM | EC PREM | VAMM PREM | BROAD PREM | SPEC PREM | SPECIFIC FIRE RATE | SPECIFIC EC RATE | SMOKE RATE | QUAKE RATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| DEDUCTIBLE | OTHER DED | FAMILIES | CON | PROTECTION CL OR GRADE | TERR | OCC | SEASON | CO-INSUR | HYDRANT OR FIRE WELL WITHIN FT | FIRE STATION WITHIN MI | GROUP | RATE TABLE | SLS REP 620 | BLD BONUS AMT 617 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| 3 PLAN | 04 STATE | 055 TERR | 001 COUNTY | 0000 CITY | 255 EXPOSURE | 840 LINE | LINE | LINE | LINE | LINE | 02 FORM-CLASS | 00 EC | 1988 YR BUILT | F CON | 02 PROT X | 0 DEV | DIVIDEND | REWRITE | SPEC HAND | CRT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|



**DWELLING**

**Dwelling Property 3**
**Special Form**
**Ed. 9-83**

---

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

---

## DEFINITIONS

Throughout this policy "you" and "your" refer to the "named insured" shown in the Declarations. "We," "us" and "our" refer to the Company providing this insurance.

---

## COVERAGES

This insurance applies to the Described Location, Coverages for which a Limit of Liability is shown and Perils Insured Against for which a Premium is stated.

**COVERAGE A**
**DWELLING**

We cover:

a. the dwelling on the Described Location, used principally for dwelling purposes;

b. structures attached to the dwelling;

c. materials and supplies on or adjacent to the Described Location for use in the construction, alteration or repair of the dwelling or other structures on this location; and

d. if not otherwise covered in this policy, building equipment and outdoor equipment used for the service of and located on the Described Location.

**COVERAGE B**
**OTHER**
**STRUCTURES**

We cover other structures on the Described Location, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line or similar connection are considered to be other structures.

We do not cover other structures:

a. used in whole or in part for commercial, manufacturing or farming purposes; or

b. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

**COVERAGE C**
**PERSONAL**
**PROPERTY**

We cover personal property, usual to the occupancy as a dwelling and owned or used by you or members of your family residing with you while it is on the Described Location. We will cover, at your request, personal property owned by a guest or servant while the property is on the Described Location.

We will not cover:

1. accounts, bills, bullion, currency, deeds, evidences of debt, manuscripts, money or securities;

2. animals, birds or fish;

3. aircraft and parts;

4. motor vehicles, other than motorized equipment used to service the Described Location; or

5. boats, other than rowboats and canoes.

If you remove personal property from the Described Location to a newly acquired principal residence, the Coverage C limit of liability shall apply at each residence for the 30 days immediately after you begin to move the property there. This time period shall not extend beyond the termination of this policy. Our liability is limited to the proportion of the limit of liability that the value at each residence bears to the total value of all personal property covered by this policy.

**COVERAGE D FAIR RENTAL VALUE**

We cover fair rental value if a loss to property described in Coverage A, B, or C by a Peril Insured Against under this policy makes that part of the Described Location rented to others or held for rental by you unfit for its normal use. Payment shall be for the shortest time required to repair or replace the part of the Described Location rented or held for rental. This period of time is not limited by expiration of this policy.

Fair rental value shall not include any expense that does not continue while that part of the Described Location rented or held for rental is unfit for its normal use. If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a Peril Insured Against in this policy, we cover any resulting fair rental value loss for a period not exceeding two weeks during which use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

**COVERAGE E ADDITIONAL LIVING EXPENSE**

We cover the necessary increase in living expense incurred by you so that your household can maintain its normal standard of living if a loss to property described in Coverage A, B, or C by a Peril Insured Against under this policy makes the Described Location unfit for its normal use. Payment shall be for the shortest time required to repair or replace the Described Location or, if you permanently relocate, the shortest time required for your household to settle elsewhere. This period of time is not limited by the expiration of this policy.

If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a Peril Insured Against in this policy, we cover any resulting additional living expense for a period not exceeding two weeks during which use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

**OTHER COVERAGES**

1. **Other Structures** – You may use up to 10% of the Coverage A limit of liability for loss by a Peril Insured Against to other structures described in Coverage B. Use of this coverage does not reduce the Coverage A limit of liability for the same loss.

2. **Debris Removal** – We will pay the reasonable expense incurred by you for the removal of debris from a property loss covered by this policy. Debris removal expense is included in the limit of liability applying to the damaged property.

3. **Improvements, Alterations and Additions** – If you are a tenant of the Described Location, you may use up to 10% of the Coverage C limit of liability for loss by a Peril Insured Against to improvements, alterations and additions made at your expense to that part of the Described Location used only by you. Use of this coverage does not reduce the Coverage C limit of liability for the same loss.

Copyright, Insurance Services Office, Inc., 1983, 1992

DP-3 Ed. 9-83

4. **World-Wide Coverage** – You may use up to 10% of the Coverage C limit of liability for loss by a Peril Insured Against to property covered under Coverage C except rowboats and canoes, while anywhere in the world. Use of this coverage reduces the Coverage C limit of liability for the same loss.

5. **Rental Value and Additional Living Expense** – You may use up to 10% of the Coverage A limit of liability for loss of both fair rental value, as described in Coverage D, and additional living expense as described in Coverage E.

   Use of this coverage does not reduce the Coverage A limit of liability for the same loss.

6. **Reasonable Repairs** – We will pay the reasonable cost incurred by you for necessary repairs made solely to protect the property covered by this policy from further damage if there is coverage for the peril causing the loss. Use of this coverage is included in the limit of liability that applies to the property being repaired.

7. **Property Removed** – Covered property while being removed from a premises endangered by a Peril Insured Against and for not more than 30 days while removed, is covered for direct loss from any cause. This coverage does not change the limit of liability that applies to the property being removed.

8. **Lawns, Plants, Shrubs and Trees** – You may apply up to 5% of the Coverage A limit of liability for loss to lawns, plants, shrubs, or trees on the Described Location by fire, lightning, smoke, explosion, riot or civil commotion, aircraft, vehicles, except vehicles owned or operated by you or a resident of the Described Location, collapse of a building, and vandalism or malicious mischief, including damage during a burglary or attempted burglary, but not the theft of property. We shall not be liable for more than our proportion of $250 on any one plant, shrub or tree including expense incurred for removing debris thereof. We do not cover property grown for commercial purposes. Payment under this coverage reduces the Coverage A limit of liability by the amount paid.

9. **Collapse.** We insure for risk of direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

   a. Perils Insured Against In Coverage C – Personal Property. These perils apply to covered building and personal property for loss insured by this other coverage;

   b. hidden decay;

   c. hidden insect or vermin damage;

   d. weight of contents, equipment, animals or people;

   e. weight of rain which collects on a roof;

   f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b, c, d, e and f unless the loss is a direct result of the collapse of a building.

   Collapse does not include settling, cracking, shrinking, bulging or expansion.

   This coverage does not increase the limit of liability applying to the damaged covered property.

## PERILS INSURED AGAINST

**COVERAGE A**
**DWELLING**
**and**
**COVERAGE B**
**OTHER**
**STRUCTURES**

We insure for all risk of physical loss to the property described in Coverages A and B except:

1. collapse, other than as provided in Other Coverage 9;

2. freezing of a plumbing, heating or air conditioning system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

   a. maintain heat in the building, or

   b. shut off the water supply and drain the system and appliances of water.

3. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock;

4. theft of any property which is not actually part of any building or structure covered;

5. theft in or to a dwelling or structure under construction;

6. wind, hail, ice, snow or sleet to outdoor radio and television antennas and aerials including their lead-in wiring, masts or towers, or to lawns, trees, shrubs or plants;

7. vandalism and malicious mischief, theft or attempted theft or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

8. continuous or repeated seepage or leakage of water or steam over a period of time from within a plumbing, heating or air conditioning system or from within a household appliance;

9. wear and tear; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; contamination; smog; smoke from agricultural smudging or industrial operations; settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; birds, vermin, rodents, insects or domestic animals. If any of these cause water to escape from a plumbing, heating or air conditioning system or household appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

10. losses excluded under General Exclusions.

Under Items 1 thru 9, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

**COVERAGE C**
**PERSONAL**
**PROPERTY**

We insure for risk of direct physical loss to property described in Coverage C caused by a peril listed below unless the loss is excluded in General Exclusions.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening; or

   (a) plants, shrubs or trees;

(b) canoes or rowboats.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

8. **Vandalism or malicious mischief.**

   This peril does not include loss by pilferage, theft, burglary or larceny.

9. **Damage by Burglars,** meaning damage to covered property caused by burglars.

   This peril does not include:

   a. theft of property; or

   b. damage caused by burglars to property on the Described Location if the dwelling has been vacant for more than 30 consecutive days immediately before the damage occurs.

10. **Falling Objects.**

    This peril does not include loss to property contained in the building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not covered.

11. **Weight of ice, snow or sleet** which causes damage to a building or property contained in the building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating or air conditioning system or from within a household appliance.

    This peril does not include loss:

    a. to the appliance from which the water or steam escaped;

    b. caused by or resulting from freezing; or

    c. on the described location caused by accidental discharge or overflow which occurs off the described location.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating or air conditioning system or of a household appliance.

    This peril does not include loss on the described location while the dwelling is unoccupied or being constructed, unless you have used reasonable care to:

    a. maintain heat in the building; or

    b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

    This peril does not include loss to a tube, transistor or similar electronic components.

## GENERAL EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the use, construction, repair, or demolition of property unless specifically provided under this policy.

   b. **Earth Movement**, meaning any loss caused by, resulting from, contributed to or aggravated by earthquake; landslide; mudflow; earth sinking, rising or shifting; volcanic eruption, meaning the explosion or effusion of a volcano; unless direct loss by:

      (1) fire;

      (2) explosion other than the explosion of a volcano; or

      (3) if an insured peril, breakage of glass or safety glazing material;

      ensues and then we will pay only for the ensuing loss.

      The peril volcanic action as defined in this policy is not considered within the term earth movement.

   c. **Water Damage**, meaning:

      (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

      (2) water which backs up through sewers or drains; or

      (3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

      Direct loss by fire or explosion resulting from water damage is covered.

   d. **Power Interruption**, meaning the interruption of power or other utility service if the interruption takes place away from the Described Location. If a Peril Insured Against ensues on the Described Location, we will pay only for loss caused by the ensuing peril.

   e. **Neglect**, meaning your neglect to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a Peril Insured Against.

   f. **War**, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

   g. **Nuclear Hazard**, to the extent set forth in the Nuclear Hazard Clause of the Conditions.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

   a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

   b. **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

   c. **Faulty, Inadequate or Defective:**

      (1) planning, zoning, development, surveying, siting;

      (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) materials used in repair, construction, renovation or remodeling; or

Copyright, Insurance Services Office, Inc., 1983, 1992                    DP-3 Ed. 9-83

(4) maintenance;

of part or all of any property whether on or off the **Described Location.**

## CONDITIONS

1. **Policy Period.** This policy applies only to loss which occurs during the policy period.

2. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. for an amount greater than the interest of a person insured under this policy; or

   b. for more than the limit of liability that applies.

3. **Concealment or Fraud.** We do not provide coverage if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

4. **Your Duties After Loss.** In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent;

   b. protect the property from further damage, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged personal property showing in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. exhibit the damaged property as often as we reasonably require and submit to examination under oath;

   e. submit to us, within 60 days after we request, your signed sworn statement of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) the interest of you and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of the policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged personal property described in 4c;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss.

5. **Loss Settlement.** Covered property losses are settled as follows:

   a. Personal property and structures that are not buildings at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace;

   b. Carpeting, domestic appliances, awnings, outdoor antennas and outdoor equipment, whether or not attached to buildings, at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace;

   c. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If at the time of loss the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately prior to the loss, we will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

  (a) the limit of liability under this policy applying to the building;

  (b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

  (c) the amount actually and necessarily spent to repair or replace the damaged building.

(2) If at the time of loss the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately prior to the loss, we will pay the larger of the following amounts, but not exceeding the limit of liability under this policy applying to the building:

  (a) the actual cash value of that part of the building damaged; or

  (b) that proportion of the cost to repair or replace, without deduction for depreciation, of that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) In determining the amount of insurance required to equal 80% of the full replacement cost of the building immediately prior to the loss, you shall disregard the value of excavations, foundations, piers and other supports which are below the undersurface of the lowest basement floor or, where there is no basement, which are below the surface of the ground inside the foundation walls, and underground flues, pipes, wiring and drains.

(4) When the cost to repair or replace the damage is more than $1000, or more than 5% of the amount of insurance in this policy on the building, whichever is less, we will pay no more than the actual cash value of the damage until actual repair or replacement is completed.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

6. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

  a. repair or replace any part to restore the pair or set to its value before the loss; or

  b. pay the difference between actual cash value of the property before and after the loss.

7. **Glass Replacement.** Covered loss to glass shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

8. **Appraisal.** If you and we fail to agree on the amount of loss, either can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.  The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state of the Described Location to select an umpire. The appraisers shall then set

Copyright, Insurance Services Office, Inc.. 1983, 1992

the amount of the loss. If the appraisers submit a written report of agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

9. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

10. **Subrogation.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. If an assignment is sought, the person insured shall sign and deliver all related papers and cooperate with us in any reasonable manner.

11. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss.

12. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

13. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Payment for loss will be made within 30 days after we reach agreement with you, entry of a final judgment, or the filing of an appraisal award with us.

14. **Abandonment of Property.** We need not accept any property abandoned by you.

15. **Mortgage Clause.**

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b. pays any premium due under this policy on demand if you have neglected to pay the premium;

c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If the policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

16. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

          Copyright, Insurance Services Office, Inc., 1983, 1992

**17. Cancellation.**

a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

b. We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

   (1) When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary by notifying you at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our short rate rules. When we cancel, the return premium will be pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**18. Non-Renewal.** We may elect not to renew this policy. We may do so by delivery to you or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

**19. Liberalization Clause.** If we adopt any revision which would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**20. Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

**21. Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

**22. Death.** If you die, we insure:

a. your legal representatives but only with respect to the property covered under the policy at the time of death;

b. with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**23. Nuclear Hazard Clause.**

a. "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

c. This policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.



**Liberty Mutual Fire Insurance Co.**
1750 Howe Avenue, Suite 400
P.O. Box 138004
Sacramento, CA 95813-9913
(800) 565-5505
Fax (800) 510-8005

December 3, 2007

John Saenz and
Gega Saenz
2370 W 133rd Avenue
San Leandro, CA  94578

RE:   Claim Number:  007444782
      Date of Loss:     July 31, 2006
      Loss Location:    2366 W Avenue Apt. 133
                        San Leandro, CA  94578

Dear Mr. and Mrs. Saenz:

This letter will follow our investigation of your claim.

As previously discussed, our investigation and evaluation of your loss determined that your claim for
water damage is not covered under your policy. Based on American Leak Detection's report and our
inspection the water damage in the bathrooms of your rental property was caused by one or more of
the following:

      1. The overflow gasket failed and leaked
      2. The toilet seal had been leaking
      3. The shower head had been leaking
      4. The caulking failed at the shower door frame and tracking.

The damaged floor of the upstairs bathroom and the damaged ceiling and walls of the downstairs
bathroom were removed by Nemesis Restoration prior to American Leak Detection's and our
inspection of your rental property. Inspection of the debris and review of Nemesis Restoration photos
prior to the tear out reveal mold and rot in the upstairs bathroom floor and ceiling and wall of the
downstairs bathroom.

As discussed, based on our investigation of the loss and our evaluation of the information that we have
been provided, the predominant cause of the loss to the floor, ceiling, and wall is continuous and
repeated leakage and seepage water from the sources outlined in American Leak Detection's report.
The damage is not consistent with a one time bath overflow. Unfortunately, damage from continuous
and repeated leakage and seepage of water is specifically excluded under your policy. Please refer to
your Dwelling Policy 3, Ed. 9/83 policy, which states in part:

### SECTION I – PERILS INSURED AGAINST

We insure for all risk of physical loss to the property described in Coverages A and B except:

**Helping People Live Safer, More Secure Lives**



b.   seepage, meaning continuous or repeated seepage or leakage of water, steam or fuel over a period of weeks, months or years:

> a.   From a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
> b.   From within or around any plumbing fixtures, including, but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures, including walls, ceilings or floors.

9.   wear and tear; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust, contamination; smog; smoke from agricultural smudging or industrial operations; settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; birds, vermin, rodents, insects or domestic animals. If any of these cause water to escape from a plumbing, heating or air conditioning system or household appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

10.   losses excluded under General Exclusions.

Under Items 1 thru 9, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

## SECTION I – GENERAL EXCLUSIONS

1.   We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

h.   Except as provided by Other Coverage 9., damage caused by "Mold, Fungus,   Wet Rot, Dry Rot, Bacteria, or Virus" is excluded, even if resulting from a Peril Insured Against. We do not cover "Remediation" of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus", even if resulting from a Peril Insured Against, except as provided   by Other Coverage 9.

2.   We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a.   Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b.   Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;

c.   Faulty, Inadequate or Defective:
(1)   planning, zoning, development, surveying, siting;
(2)   design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3)   materials used in repair, construction, renovation or remodeling; or
(4)   maintenance;

of part or all of any property whether on or off the Described Location.
**Helping People Live Safer, More Secure Lives**

The other exclusions and limitations listed above may also act to bar coverage for this claim. Please be assured that we have given the fullest consideration to your claim. We regret that we cannot be of assistance in this matter.

The action being taken by this company, as described in this letter, constitutes our final position on your claim based upon the information and documentation we have received. If you have any new or different information that might lead us to reconsider our decision on this matter, please contact us immediately.

We are relying on the policy conditions or exclusions that we have reasonably been able to conclude are applicable to the facts of this loss. We do not intend to waive, but rather expressly reserve, our rights to assert any other policy conditions or exclusions that we might later learn may be applicable to this loss.

Per the regulations promulgated by the California Department of Insurance, if you feel this claim has been wrongfully denied or rejected, you may have this matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, Los Angeles, California, 90013, or you may call them at 1-800-927-4357.

Since this concludes the handling of your claim we bring your attention to the following policy provision:

### Section I – Conditions

**Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss.

If you have any questions please feel free to call me. Thank you for your assistance in the handling of your claim and for choosing Liberty Mutual Fire Insurance Company.

Sincerely,

Amy Remen-Morgan
Sr. Property Loss Specialist I
Liberty Mutual Fire Insurance Company
(707) 975-3143

**Helping People Live Safer, More Secure Lives**

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LIBERTY MUTUAL FIRE INSURANCE COMPANY, and DOES 1
through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
GEGA SAENZ

ENDORSED
FILED
ALAMEDA COUNTY

JAN 1 7 2008

CLERK OF THE SUPERIOR COURT
By Cecilia Anchundo, Deputy

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | CASE NUMBER:<br>*(Número del Caso):* | |
|---|---|---|

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court, County of Alameda, Hayward Branch
24405 Amador Street
Hayward, California 94544

**V G 0 8 3 6 6 5 3 5**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
GARY S. ROSE
FLYNN, ROSE & PERKINS, 59 N. Santa Cruz Avenue, Suite Q, Los Gatos, CA. 95030

**CECILIA ANCHUNDO**

DATE: **JAN 1 7** 2008     PAT SWEETEN     Clerk, by _____, Deputy
*(Fecha)*          *(Secretario)*          *(Adjunto)*
EXECUTIVE OFFICER CLERK

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* LIBERTY MUTUAL FIRE INSURANCE

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>American LegalNet, Inc.   www.USCourtForms.com |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
GARY S. ROSE, #83744
HEATHER E. GIBSON, #240938
FLYNN, ROSE & PERKINS
59 North Santa Cruz Avenue, Suite Q, Los Gatos, California 95030
TELEPHONE NO.: (408)399-4566     FAX NO.: (408)399-6683
ATTORNEY FOR (Name): Plaintiff, Gega Saenz

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, California 94544
BRANCH NAME: Hayward

**FOR COURT USE ONLY**

# F I L E D
ALAMEDA COUNTY

JAN 1 7 2008

CLERK OF THE SUPERIOR COURT
By _Cecilia Omehunto_
Deputy

CASE NAME:
GEGA SAENZ v. LIBERTY MUTUAL FIRE INSURANCE CO.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited ☐ Limited<br>(Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | HG08366535<br>JUDGE:<br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☑ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify):
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: January 15, 2008
GARY S. ROSE
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

Flynn, Rose & Perkins
Attn: Rose, Gary S.
59 North Santa Cruz Avenue, Ste. Q
Los Gatos, CA   95030

## Superior Court of California, County of Alameda

| | |
|---|---|
| Saenz | No. HG08366535 |
| **Plaintiff/Petitioner(s)** | |
| VS. | **NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER** |
| Liberty Mutual Fire Insurance Company | Unlimited Jurisdiction |
| **Defendant/Respondent(s)** | |
| (Abbreviated Title) | |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD.
Notice is given that a Case Management Conference has been scheduled as follows:

| Date: **06/04/2008**<br>Time: **03:15 PM** | Department: 24<br>Location: **Administration Building**<br>**Third Floor**<br>**1221 Oak Street, Oakland CA 94612**<br><br>Internet: **http://www.alameda.courts.ca.gov** | Judge: **Patrick J. Zika**<br>Clerk: **Benilda Nelson**<br>Clerk telephone: **(510) 267-6940**<br>E-mail:<br>**Dept.24@alameda.courts.ca.gov**<br>Fax: **(510) 267-1509** |

## ORDERS

1. You must:
   a. **Serve** all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (CRC 3.110(b));
   b. **Give notice** of this conference to any party not included in this notice and file proof of service;
   c. **Meet and confer**, in person or by telephone, to consider each of the issues identified in CRC 3.724 no later than **30** calendar days before the date set for the Case Management Conference;
   d. **File and serve** a completed Case Management Conference Statement (use of Judicial Council Form CM 110 is <u>mandatory</u>) at least **15** days before the Case Management Conference (CRC 3.725)

2. If you do not follow the orders above, you are hereby ordered to show cause why you should not be sanctioned under CRC 2.30. The hearing on the Order to Show Cause re: Sanctions will be at the same time as the Case Management Conference. Sanctions may include monetary sanctions and any other sanction permitted by law, including striking pleadings or dismissing the action.

3. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.
4. The Direct Calendar Judge will issue orders at the conclusion of the conference that should include:
   a. Referring to ADR and setting an ADR completion date
   b. Dismissing or severing claims or parties
   c. Setting a trial date.

*Telephonic appearances at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties may make arrangements by calling 1-888-882-6878, or faxing a service request to 1-888-882-2946. This service is subject to charges by the vendor.

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice of Hearing by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 01/22/2008.

By _____

Deputy Clerk

## Superior Court of California, County of Alameda



## Notice of Judicial Assignment for All Purposes

Case Number: HG08366535
Case Title:      Saenz VS Liberty Mutual Fire Insurance Company
Date of Filing: 01/17/2008

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**This case is hereby assigned for all purposes to:**

| | |
|---|---|
| **Judge:** | **Patrick J. Zika** |
| **Department:** | **24** |
| **Address:** | **Administration Building** |
| | **1221 Oak Street** |
| | **Oakland  CA  94612** |
| **Phone Number:** | **(510) 267-6940** |
| **Fax Number:** | **(510) 267-1509** |
| **Email Address:** | **Dept.24@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure §170.6 must be exercised within the time period provided by law. (See Govt. Code 68616(i); Motion Picture and Television Fund Hosp. v. Superior Court (2001) 88 Cal.App.4th 488, 494; and Code Civ. Proc. §1013.)**

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULE 3.135.

### General Procedures

All pleadings and other documents must be filed in the clerk's office at any court location except when the Court permits the lodging of material directly in the assigned department. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Patrick J. Zika
DEPARTMENT 24

Counsel are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at:
http://www.alameda.courts.ca.gov/courts/rules/index.shtml and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

The parties are always encouraged to consider using various alternatives to litigation, including mediation and arbitration, prior to the Initial Case Management Conference. The Court may refer parties to alternative dispute resolution resources.

The use of e-mail is generally preferred by the court to reduce the heavy burden on court staff in responding to telephone and fax communications, particularly for requests relating to scheduling of case management events. Use of e-mail will greatly facilitate a prompt response by the court and staff to your inquiries.

Please note that use of e-mail/fax is not a substitute for the filing of pleadings or other documents.

Counsel and self-represented parties are reminded of the obligation to provide copies of all such communications to opposing counsel and self-represented parties on a contemporaneous basis.

If the communication requests a response from the court, e-mail addresses of all opposing counsel/self represented parties shall be supplied in the original e-mail whenever available to the sender.

When sending an e-mail, the e-mail must be free of viruses and preferably in Microsoft Word format. Do not send the Court Courtesy copy of any pleading unless specifically requested.

## Schedule for Department 24

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions. Parties must confer on agreeable dates consistent with the court's schedules before contacting the clerk to reserve a date.

- Trials generally are held: Mondays through Thursdays at 9:00 a.m.
- Case Management Conferences are held: Initial Case Management Conferences: Wednesdays and Thursdays at 3:15 p.m.
- Case Management Conference Continuances: Fridays at 9:00 a.m.
- Law and Motion matters are heard: Mondays and Tuesdays at 3:15 p.m. Contact the clerk to reserve a date before filing any law and motion matters. For Tentative rulings, please see specifically Local Rule 3.30(c). To contest a ruling, call or e-mail Dept. 24 in a timely manner.
- Settlement Conferences are heard: Fridays at 10:00 a.m.
- Ex Parte matters are heard: Mondays and Wednesdays at 3:00 p.m. Contact the clerk to reserve a date and time before noticing any party.

- Contact the clerk to reserve a date before filing any demurrers. Contact the clerk to reserve a date before filing any summary judgments.

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
  Email:       Dept.24@alameda.courts.ca.gov

  Trial Management Compliance hearings and first day of trial: Fridays at 2:00 p.m. Compliance hearings are heard: Mondays through Thursdays at 3:15 p.m. and Fridays at 9:00 a.m.

- Ex Parte Matters
  Email:       Dept.24@alameda.courts.ca.gov

  Contact the clerk to reserve a date and time before noticing any party.

## Tentative Rulings

The court will issue tentative rulings in accordance with the Local Rule 3.30(c). Tentative rulings will become the Court's order unless contested. Tentative rulings will be available at:

- Website: www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 24

- Phone: 1-866-223-2244

Dated: 01/18/2008

Executive Officer / Clerk of the Superior Court

Digital

By    *[signature]*

Deputy Clerk

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on

the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 01/22/2008

By _____

Deputy Clerk

## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION PACKAGE
### Effective April 15, 2005

### Instructions to Plaintiff / Cross-Complainant

In all general civil cases filed in the trial courts after June 30, 2001, the plaintiff is required to serve a copy of this ADR information package on each defendant.

California Rules of Court, Rule 201.9 (Excerpt)

(a) Each court must make available to the plaintiff, at the time of filing of the complaint, an Alternative Dispute Resolution (ADR) information package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes . . .

(2) Information about the ADR programs available in that court . . .

(3) In counties that are participating in the Dispute Resolution Programs Act (DRPA), information about the availability of local dispute resolution programs funded under the DRPA . . .

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) Court may make package available on Web site . . .

**(c) The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR information package on any new parties to the action along with the cross-complaint.**

## GENERAL INFORMATION ABOUT ADR

### · Introduction to Alternative Dispute Resolution

Did you know that most civil lawsuits settle without a trial? And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (also called ADR). The most common forms of ADR are mediation, arbitration, and neutral evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. In mediation, for example, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through court-connected and community dispute resolution programs and private neutrals.

### Advantages of Alternative Dispute Resolution

ADR can have a number of advantages over a lawsuit:

- **ADR can be speedier.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- **ADR can save money.** Court costs, attorney fees, and expert witness fees can be saved.

- **ADR can permit more participation.** With ADR, the parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- **ADR can be flexible.** The parties can choose the ADR process that is best for them.

- **ADR can be cooperative.** In mediation, for example, the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- **ADR can reduce stress.** There are fewer, if any, court appearances. And because ADR can be speedier, cheaper, and can create an atmosphere in which the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads. For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute instead of filing a lawsuit. Even when a lawsuit has been filed, ADR can be used before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

### · Disadvantages of Alternative Dispute Resolution

ADR may not be suitable for every dispute.

If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure and review for legal error by an appellate court.

There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

The neutral may charge a fee for his or her services.

·If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitations. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

Rev 4/05

# Three Common Types of Alternative Dispute Resolution

This section describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

## Mediation

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved; the parties do.

Mediation is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how they each see things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or has unequal bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

## Arbitration

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records) rather than by testimony.

There are two kinds of arbitration in California: (1) Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and is normally binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. (2) "Judicial arbitration" takes place within the court process and is not binding unless the parties agree at the outset to be bound. A party to this kind of arbitration who does not like a judicial arbitration award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to decide on the outcome of their dispute themselves.

## Neutral Evaluation

In evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments and makes an evaluation of the case. Each party gets a chance to present his or her side and hear the other side. This may lead to a settlement or at least help the parties prepare to resolve the dispute later on. If the neutral evaluation does not resolve the dispute, the parties may go to court or try another form of ADR.

Neutral evaluation, like mediation, can come early in the dispute and save time and money.

Neutral evaluation is most effective when a party has an unrealistic view of the dispute, when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Neutral evaluation may not be a good idea when it is too soon to tell what the case is worth or if the dispute is about something besides money, like a neighbor playing loud music late at night.

## Other Types of Alternative Dispute Resolution

There are several other types of ADR besides mediation, arbitration, and neutral evaluation. Some of these are conciliation, settlement conferences, fact-finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR methods. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering.

Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge.

You may wish to seek the advice of an attorney about your legal rights and other matters relating to the dispute.

## Help Finding an Alternative Dispute Resolution Provider in Your Community

To locate a dispute resolution program or private neutral in your community:

- Visit the Court's Web site. The Alameda County Superior Court maintains a list of court-connected mediators, neutral evaluators, and private arbitrators at http://www.co.alameda.ca.us/courts/adr.htm.

- Contact the Small Claims Court Legal Advisor. The small claims legal advisor for Alameda County is located at the Wiley W. Manuel Courthouse, Self-Help Center. The phone number is 510-268-7665.

- Visit the California Department of Consumer Affairs' Web site. The Department of Consumer Affairs (also called the DCA) has posted a list of conflict resolution programs throughout the state. The list can be found at http://www.dca.ca.gov/r_r/mediati1.htm

  You can also call the Department of Consumer Affairs, Consumer Information Center, at 800-952-5210.

- Contact your local bar association. You can find a list of local bar associations in California on the State Bar Web site at http://www.calbar.org/2lin/2bar.htm.

  If you cannot find a bar association for your area on the State Bar Web site, check the yellow pages of your telephone book under "Associations."

- Look in the yellow pages of your telephone book under "Arbitrators" or "Mediators."

- Automotive Repair, Smog Check: The California Bureau of Automotive Repair (also known as BAR) offers a free mediation service for consumers who are dissatisfied with an auto repair or a smog check, or who dispute an invoice for such services. BAR registers and regulates California automotive repair facilities and licenses smog, lamp, and brake inspection stations. Learn more at http://smogcheck.ca.gov/smogweb/geninfo/otherinfo/mediation.htm or call 800-952-5210.

- Attorney Fees: The State Bar of California administers a mandatory fee arbitration program to resolve attorney fee disputes between lawyers and their clients. The program is an informal, low-cost forum and is mandatory for a lawyer if a client requests it. Mediation of attorney fees disputes may also be available in some areas of California. Learn more at http://www.calbar.org/2bar/3arb/3arbndx.htm or call 415-538-2020.

## DISPUTE RESOLUTION PROGRAMS IN ALAMEDA COUNTY

**Mediation Services**
**222278 Redwood Road, Castro Valley, CA 94546**
Phone: (510) 733-4940    fax: (510) 733-4945
Provides a panel of mediators to assist in the process of reaching an agreement in the areas of Neighborhood Disputes, Child Custody, Divorce, Parent/Teel Conflicts, Home Owners Association, Business, Real Estate, Employer/Employee, and Fremont Rent Increases.

**East Bay Community Mediation**
**1968 San Pablo Avenue, Berkeley, CA 94702-1612**
Phone: (510) 548-2377    fax: (510) 548-4051
EBCM is a community-based mediation program created by the union of Berkeley Dispute Resolution Service and Conciliation Forums of Oakland. EBCM offers counseling on options and approaches to resolving a dispute, mediation, large-group conflict facilitation, and conflict resolution skills workshops.

**Catholic Charities of the East Bay: Oakland – Main Office**
**433 Jefferson Street, Oakland, CA 94607**
Phone: (510) 768-3100    fax: (510) 451-6998
Mediators are responsible for mediation sessions involving the youth, victim and family members to work towards a mutually agreeable restitution agreement. Also provide free workshops in anger management and mediation.

**Center for Community Dispute Settlement**
**1789 Barcelona Street, Livermore, CA 94550**
Phone: (925) 373-1035
Provides services in Tri-Valley for all of Alameda County. Program goals are to increase the number of court cases resolved, mediating small claims cases four days per week, and training youth in listening and conflict resolution skills.

**California Lawyers for the Arts: Oakland Office**
**1212 Broadway Street, Suite 837, Oakland, CA 94612**
Phone: (510) 444-6351    fax: (510) 444-6352
This program increases the resolution of arts related disputes such as artistic control, ownership of intellectual property, credit for work performed or produced and contract issues, through the use of alternative dispute resolution. It also increases the capacity to provide services for counseling, conciliation and administration of mediation, arbitration and meeting facilitation.

Rev 4/05

## ALAMEDA COUNTY SUPERIOR COURT
## ADR PROGRAM

### ADR Program Administrator

Pursuant to California Rule of Court 1580.3, the presiding judge of the Superior Court of California, County of Alameda has designated Benjamin D. Stough, Berkeley Trial Court Administrator, to serve as ADR program administrator.

A Plaintiff may elect, the parties may stipulate or a judge may refer a case to Judicial Arbitration. The Judicial Arbitration Program Coordinator may be contacted at (510) 670-6646.

### The Judicial Arbitration Process

**Appointment of Arbitrator** (must be appointed within 30 days after referral per *CRC 1605*).
⇒ Parties mailed list of five names from which to select. (List mailed within 5-10 business days after receipt of referral).

⇒ Each party may reject one of the names listed (10 calendar days per *CRC 1605a*)

⇒ The administrator randomly appoints the arbitrators from the names remaining on the list. If only one remains then is deemed appointed.

**Assignment of Case** *(CRC 1605a(4))*
⇒ Within 15 days of notice of the appointment, the arbitrator shall contact parties in writing about time, date, and place of the hearing. The parties shall receive at least 30 days notice prior to the hearing.

**Hearings** *(CRC 1611)*
⇒ Shall be scheduled so as to be completed not less than 35 days nor more than 90 days from the date the arbitrator was assigned. For good cause shown, the case may be continued an additional 90 days by the Case Management Judge.

**Award of Arbitrator** *(CRC 1615b & c)*
⇒ Arbitrator must file an award within 10 days after conclusion of the arbitration hearing. The court may allow 20 additional days upon application of arbitrator is cases of unusual length or complexity.

⇒ Within 30 days of the filing of the award the parties may file a Request for Trial de Novo. The clerk shall enter the award as a judgment after 30 days provided a Trial de Novo has not been filed.

### Return of Case to Court
⇒ Upon Filing of Trial de Novo the action is returned to Case Management Judge for further proceedings. *(CRC 1616 & Local Rule 6.4)*

⇒ If Trial de Novo is not filed then judgment is entered and the Case Management Judge is notified *(CRC 1615c & Local Rule 6.6)*

⇒ If parties indicate a settlement then case is returned to Case Management Judge and case is continued 45 days for an Order to Show Cause RE filing a dismissal. *(Local Rule 6.6)*

Rev 4/05

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| Allen E. Broussard Justice Center<br>600 Washington Street, Oakland, CA 94707 | Berkeley Courthouse<br>2000 Center Street, 2nd Fl., Berkeley, CA 94704 | George E. McDonald Hall of Justice<br>2233 Shoreline Drive, Alameda, CA 94501 |
| --- | --- | --- |
| Fremont Hall of Justice<br>39439 Paseo Padre Parkway, Fremont, CA 94538 | Gale/Schenone Hall of Justice<br>5672 Stoneridge Drive, Pleasanton, CA 94588 | Wiley W. Manuel Courthouse<br>661 Washington Street, Oakland, CA 94607 |
| Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | René C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | |

Plaintiff

vs.

Case No.: _____

## STIPULATION FOR ALTERNATIVE
## DISPUTE RESOLUTION (ADR)

Defendant

The parties by and through their attorneys of record hereby stipulate to submit the within

controversy to the following Alternative Dispute Resolution process:

_____

_____

_____

### ORDER

The foregoing stipulation having been read and considered, and good cause appearing, now therefore,

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the matter be set for Order to Show Cause Hearing RE:

Dismissal on _____ at _____ a.m./p.m. in Department _____

Dated: _____

_____
JUDGE OF THE SUPERIOR COURT

(SEAL)

Rev 4/05

*6358535*

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):<br>GARY S. ROSE #83744<br>FLYNN, ROSE & PERKINS<br>59 N. SANTA CRUZ AVE. SUITE Q<br>LOS GATOS, CA 95030<br>TELEPHONE NO.: 408-399-4566    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): PLAINTIFF | **FOR COURT USE ONLY**<br><br>**FILED**<br>ALAMEDA COUNTY<br><br>FEB 1 3 2008<br><br>CLERK OF THE SUPERIOR COURT<br>By _Paley Smith_<br>                              Deputy |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** ALAMEDA<br>STREET ADDRESS: 1225 Fallon Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Oakland, Ca 94612<br>BRANCH NAME: | |
| **PLAINTIFF/PETITIONER:** GEGA SAENZ<br><br>**DEFENDANT/RESPONDENT:** LIBERTY MUTUAL FIRE INSURANCE COMPANY | **CASE NUMBER:**<br>HG08366535 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>267806 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☐ summons
   b. ☐ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents):* SUMMONS; COMPLAINT; ALTERNATIVE DISPUTE RESOLUTION INFORMATION PACKAGE

3. a. Party served *(specify name of party as shown on documents served):*
   LIBERTY MUTUAL FIRE INSURANCE COMPANY

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   BECKY DEGEORGE, AGENT FOR SERVICE FOR CSC LAWYERS

4. Address where the party was served: 2730 Gateway Oaks Drive #100
   Sacramento, Ca 95833

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 1/30/2008   (2) at *(time):* 12:53P
   b. ☐ **by substituted service.** On *(date):*        at *(time):*        I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*        from *(city):*        or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |

PLAINTIFF/PETITIONER: GEGA SAENZ

DEFENDANT/RESPONDENT: LIBERTY MUTUAL FIRE INSURANCE COMPANY

NUMBER: HG08366535

5.  c. [  ] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                      (2) from *(city):*

    (3) [  ] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) [  ] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. [  ] **by other means** *(specify means of service and authorizing code section):*

    [  ] Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a. [  ] as an individual defendant.
  b. [  ] as the person sued under the fictitious name of *(specify):*
  c. [  ] as occupant.
                  LIBERTY  MUTUAL  FIRE  INSURANCE  COMPANY
  d. [√] On behalf of *(specify):*
      under the following Code of Civil Procedure section:

|  |  |
|---|---|
| [  ] 416.10 (corporation) | [√] 415.95 (business organization, form unknown) |
| [  ] 416.20 (defunct corporation) | [  ] 416.60 (minor) |
| [  ] 416.30 (joint stock company/association) | [  ] 416.70 (ward or conservatee) |
| [  ] 416.40 (association or partnership) | [  ] 416.90 (authorized person) |
| [  ] 416.50 (public entity) | [  ] 415.46 (occupant) |
|  | [  ] other: |

7.  **Person who served papers**
  a. Name:  Mike Singh
  b. Address: **Professional Legal Services, Inc.,** P.O. Box 28404, San Jose, CA  95159
  c. Telephone number: 408-280-0700
  d. The fee for service was: $ $82.50
  e. I am:
    (1) [  ] not a registered California process server.
    (2) [  ] exempt from registration under Business and Professions Code section 22350(b).
    (3) [√] a registered California process server:
      (i) [  ] owner [  ] employee [√] independent contractor.
      (ii) Registration No.: 2000-02
      (iii) County: Sacramento

8. [√] **I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

    or

9. [  ] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  February 4, 2008

Mike Singh                  ▶
_____       _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)       (SIGNATURE )

GARY S. ROSE, Calif. Bar #83744
HEATHER E. GIBSON, Calif. Bar # 240938
FLYNN, ROSE & PERKINS
59 North Santa Cruz Avenue, Suite Q
Los Gatos, California 95030
(408) 399-4566

Attorneys for Plaintiff
GEGA SAENZ

ENDORSED
FILED
ALAMEDA COUNTY

JAN 1 7 2008

CLERK OF THE SUPERIOR COURT
By Cecilia Anchundo, Deputy

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

(UNLIMITED JURISDICTION)

| | |
|---|---|
| GEGA SAENZ, | ) Case No. |
| | )    ℍ G 0 8 3 6 6 5 3 5 |
|                Plaintiff, | ) COMPLAINT |
| vs. | ) (Breach of Contract, Breach of the Covenant of ) Good Faith and Fair Dealing) |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, and DOES 1 through 20, inclusive, | ) ) ) |
|                Defendants. | ) ) |

Plaintiff alleges:

## FACTS COMMON TO ALL CAUSES OF ACTION

1.      Plaintiff is, and at all times mentioned herein was, a resident of the City of San Leandro, County of Alameda, State of California

2.      Plaintiff is informed and believes and thereon alleges that Defendant Liberty Mutual Fire Insurance Company, (hereinafter referred to as "LIBERTY MUTUAL" is a Wisconsin corporation, licensed to practice and carry out the business of insurance in the State of California.

3.      Total damages related to the loss complained of herein exceed the jurisdictional minimum of this Court.

4.     The true names and capacities, whether individual, corporate or otherwise of Defendants DOES 1 through 20, inclusive, are unknown to Plaintiff at this time. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to, and caused injury and damage proximately thereby to Plaintiff as herein alleged.

5.     On or about February 28, 2006, Defendant renewed a policy issued Plaintiff, number FN2-261-933644-0067, which included coverage for damage to Plaintiff's rental dwelling, located at 2370 West Avenue 133, in San Leandro, California. Plaintiff is informed and believes the Defendant failed to deliver the original policy to her, containing its terms, conditions and limitations. Subsequent to the loss which is the subject of this suit, she obtained a partial copy of said policy, which is attached hereto as **Exhibit 1**.

6.     Plaintiff had rented 2370 West Avenue property to two individuals, beginning on or about August of 2004. At the time, a joint walkthrough took place where all damages to the unit were noted. Other than a small stain on the floor of an upstairs bath, no water or other damage was identified, and the unit was in excellent condition.

7.     On or about July 31, 2006, Plaintiff conducted a walkthrough inspection of the unit as the tenants were vacating it. During the walkthrough, Plaintiff noticed extensive water damage to the vinyl floor in the upstairs bathroom for the first time. Some weeks before they vacated the unit, the tenants had also informed Plaintiff that damage had occurred to a wall below the bathroom, based on a single occurrence. Plaintiff is informed and believes the same event which damaged the lower wall also damaged the upstairs bathroom.

8.     The policy purchased by Plaintiff insured her against the peril of damage caused by water which escapes from within any plumbing system or household appliance, with a limit of $255,000.00 per occurrence.

9.     Plaintiff timely notified LIBERTY MUTUAL of her claim on or about August 10, 2006.

10.    On or about August 15, 2006, Defendant hired American Leak Detection (ALD) to inspect the plumbing systems at the above-described unit had incurred. ALD determined that the

shower riser and toilet seal appeared to leak, and that under high pressure, some leakage occurred in the shower door. ALD did not opine that these leaks had led to the observed damage; Plaintiff's son-in-law, a contractor with over 20 years of experience repairing water-damaged structures, judged that the minor leaks identified by ALD, even if they had occurred, could not possibly explain the scope of the discovered water loss, nor was it consistent with the tenants' report of a single episode of water which damaged the wall just below the bath.

11.     On or about September 13, 2006, Plaintiff received a letter from LIBERTY MUTUAL denying her claim based on various exclusions including an exclusion for repeated leakage and seepage of water. LIBERTY MUTUAL's reasons for denial were not reasonably based on any investigation or analysis of the facts, and were not supported by ALD's analysis.

12.     On or about March 15th, 2007, and March 16th, 2007, Mrs. Saenz sent communications to LIBERTY MUTUAL outlining her concerns and questions about receiving payment in order to repair her damaged property.  Mrs. Saenz did not receive any response other than a reservation of rights letter on or about March 27, 2007, which failed to address any of her substantive questions or concerns.

13.     On June 28, 2007, Plaintiff and her son-in-law, Tom Pearson, drafted a letter to LIBERTY MUTUAL advising it of Plaintiff's situation, and providing supporting evidence establishing her entitlement to coverage for the above described property damage. LIBERTY MUTUAL failed to adequately respond to this communication.

14.     The Defendant thereafter requested an Examination Under Oath of Mrs. Saenz, which took place on October 2, 2007. Mrs. Saenz truthfully and fully responded to all the inquiries of LIBERTY MUTUAL. On or about December 3, 2007, LIBERTY MUTUAL re-denied her claims, on the same basis as it had done so earlier (**Exhibit 2**).

15.     Plaintiff contends, by reason of its failure to deliver the relevant policy terms and conditions to her, that Defendant's decision to deny this claim is not only wrong, it is estopped to rely upon the exclusions purporting to justify its denial of the claim, as a consumer in the Plaintiff's condition could not reasonably anticipate that water damage, which was discovered for the first time within two years of the tenants taking possession, and which was reported to be the

result of a single episode, would nonetheless be excluded under the policy because of alleged deficiencies in the plumbing systems of the home. Moreover, Plaintiff specifically disputes that the observed damages were the result of long-term leaks, and were, instead, the result of some episode of flooding in the upstairs bath, brought about by some defect, or the neglect, error or omission of the residents.

16.    Plaintiff has fully complied with the terms and conditions imposed upon her by the policy of insurance identified herein. As a result of Defendant's unreasonable and wrongful conduct, Plaintiff was required to retain the services of legal counsel; Plaintiff seeks her reasonable attorney's fees under Brandt v. Superior Court.

17.    In willful disregard of its obligations, duties, and representations to Plaintiff, Defendant failed to properly investigate and thereafter effectuate the prompt, fair and equitable settlement of this claim, notwithstanding the fact that liability for said claim is clear, and has failed to act in good faith responding to Plaintiff's claim.

PLAINTIFF, FOR A FIRST COUNT AGAINST DEFENDANT, FOR BREACH OF CONTRACT, ALLEGES:

18.    Plaintiff realleges and incorporates herein by reference each and every allegation of Paragraphs 1-17, inclusive of this Complaint.

19.    Defendant, by failing to make prompt and full payment under the policy, breached said insurance contract.

20.    As a direct and proximate result of the breach of contract by said Defendant, Plaintiff has been injured in a sum representing the benefits due her, plus interest thereon, from the date said payments should have been made under the terms of the policy.

21.    As a further direct and proximate result of the breach of contract by Defendant, Plaintiff has suffered and will continue to suffer consequential damages in an amount to be shown according to proof at trial.

PLAINTIFF, FOR A SECOND COUNT AGAINST DEFENDANT, FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING, ALLEGES:

22.    Plaintiff realleges and incorporates herein by reference each and every allegation of

1    Paragraphs 1-21, inclusive of this Complaint.

2         23.    In committing the acts and omissions as further set forth in this Complaint,

3    Defendant breached its duty of good faith and fair dealing owed to Plaintiff through the adoption

4    of techniques and practices designed to frustrate Plaintiff's efforts to obtain insurance benefits,

5    including, without limitation, requesting multiple copies of the same records, requesting

6    information not reasonably necessary to the adjudication of her claim, and failing to fairly evaluate

7    the evidence associated the loss.

8         24.    Plaintiff is informed and believes and thereon alleges that Defendant breached the

9    duty of good faith and fair dealing by committing other acts and omissions of which Plaintiff is

10   presently unaware. Plaintiff will seek leave of this Court to amend this Complaint at such time as

11   she discovers the other acts and omissions of said Defendant, constituting such breach.

12        25.    As a direct and proximate result of the aforementioned wrongful conduct, Plaintiff

13   has been deprived of timely payment of the sums due to her, and has suffered anxiety, worry,

14   mental and emotional distress, and other incidental damages and out-of-pocket expenses, causing

15   Plaintiff to suffer general and special damages in an amount to be proved at trial, but in all events,

16   greater than the jurisdictional minimum of this Court.

17        26.    Defendant's failure to provide the promised coverages was done with a conscious

18   disregard for Plaintiff's rights, such as to constitute oppression, fraud, or malice under California

19   Civil Code §3294, entitling Plaintiff to exemplary damages in an amount appropriate to deter or set

20   an example of said Defendant.

21        WHEREFORE, Plaintiff prays judgment against Defendant, as follows:

22        (1)    For the amount of the benefits due pursuant to the contract of insurance, according

23               to proof at trial;

24        (2)    For interest on the payments not made, from and after the dates at which such

25               payments should have been made;

26        (3)    For general damages according to proof;

27        (4)    For special damages according to proof;

28        (5)    For exemplary damages in an amount appropriate to deter or set an example of

---

1      Defendant;

2      (6)    For prejudgment interest on the damages alleged herein as allowed by law;

3      (7)    For attorneys' fees and costs of suit incurred herein; and

4      (8)    For such other and further relief as the Court may deem just and proper.

5    DATE: January 15, 2008                    FLYNN, ROSE & PERKINS

6

7

8                                             By
                                              GARY S. ROSE
9                                             Attorney for Plaintiff GEGA SAENZ

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  KEVIN G. McCURDY (SBN 115083)
   MARYAM GILAK (SBN 218325)
2  McCURDY & FULLER LLP
   4300 Bohannon Drive, Suite 240
3  Menlo Park, CA 94025
   Telephone: (650) 618-3500
4  Facsimile: (650) 618-3599
   E-mail: kevin.mccurdy@mccurdylawyers.com
5          maryam.gilak@mccurdylawyers.com

6  Attorneys for Defendant
   LIBERTY MUTUAL FIRE INSURANCE
7  COMPANY

ENDORSED
FILED
ALAMEDA COUNTY

FEB 28 2008

CLERK OF THE SUPERIOR COURT
By   SUSAN ERICKSON
                              Deputy

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                IN AND FOR THE COUNTY OF ALAMEDA

11

12  GEGA SAENZ,                        |  CASE NO. HG08366535
                                       |
13              Plaintiff,             |
                                       |  **DEFENDANT LIBERTY MUTUAL FIRE
14      v.                             |  INSURANCE COMPANY'S ANSWER TO
                                       |  PLAINTIFF'S COMPLAINT FOR
15  LIBERTY MUTUAL FIRE INSURANCE      |  BREACH OF CONTRACT AND
    COMPANY, and DOES 1 through 20,    |  BREACH OF THE COVENANT OF
16  inclusive,                         |  GOOD FAITH AND FAIR DEALING**
                                       |
17              Defendants.            |

18

19

20      Pursuant to Code of Civil Procedure §431.30, defendant Liberty Mutual Fire Insurance

21  Company ("Liberty Mutual") denies, generally and specifically, each and every allegation

22  contained in plaintiff's complaint and further denies that plaintiff has sustained, or will sustain,

23  damages in the sums alleged, or at all, or that plaintiff is entitled to any relief sought in the

24

25  complaint against Liberty Mutual. Furthermore, Liberty Mutual asserts the following affirmative

26  defenses:

27

28  27266

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

- 1 -

**Defendant Liberty Mutual Fire Insurance Company's Answer To Plaintiff's Complaint For Breach Of
Contract and Breach Of the Covenant Of Good Faith and Fair Dealing**

1

### FIRST AFFIRMATIVE DEFENSE

2      Plaintiff's complaint fails to state facts sufficient to constitute a cause of action against

3  Liberty Mutual.

4

### SECOND AFFIRMATIVE DEFENSE

5      Plaintiff's claims against Liberty Mutual are barred, in whole or in part, by the doctrines of

6  laches, unclean hands, waiver, and/or estoppel.

7

### THIRD AFFIRMATIVE DEFENSE

8      Plaintiff's claims against Liberty Mtuual are barred, in whole or in part, by the doctrines of

9  res judicata, collateral estoppel, judicial estoppel, and/or issue preclusion.

10

### FOURTH AFFIRMATIVE DEFENSE

11      Plaintiff's claims against Liberty Mutual are barred, in whole or in part, by the exclusions,

12  conditions and other limitations in the insurance policy issued by Liberty Mutual.

13

### FIFTH AFFIRMATIVE DEFENSE

14      Plaintiff's claims against Liberty Mutual are barred, in whole or in part, to the extent that

15  notice of said claims was not provided in the manner prescribed by the insurance policy issued by

16  Liberty Mutual and/or as required by law.

17

### SIXTH AFFIRMATIVE DEFENSE

18      Plaintiff's claims against Liberty Mutual are barred, in whole or in part, because no

19  coverage is provided under Liberty Mutual policy to the extent that any of the claims involve

20  damage or loss that occurred prior to the inception of the Liberty Mutual policy.

21

### SEVENTH AFFIRMATIVE DEFENSE

22      Plaintiff's claims against Liberty Mutual are barred, in whole or in part, to the extent that

23  no actual, justiciable case or controversy exists between plaintiff and Liberty Mutual, and/or to the

24  extent that any dispute between plaintiff and Liberty Mutual is not ripe for adjudication.

25

### EIGHTH AFFIRMATIVE DEFENSE

26      Plaintiff has failed to comply with, or perform the obligations required by the terms,

27  conditions, and requirements of the insurance policy issued by Liberty Mutual, thereby barring

28

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA  94025
(650) 618-3500

27266

- 2 -

1  recovery for the damages, claims or losses set forth in plaintiff's complaint.

2  ### NINTH AFFIRMATIVE DEFENSE

3  Plaintiff acted with full knowledge of all the facts and circumstances surrounding her

4  damages, claims or losses and knowingly and voluntarily assumed the risk of the matters causing

5  the damage alleged in her complaint. Thus, any damages incurred by plaintiff were the proximate

6  result of the risks so assumed.

7  ### TENTH AFFIRMATIVE DEFENSE

8  Liberty Mutual has no obligation to the extent the plaintiff failed to assist and/or cooperate

9  with Liberty Mutual as required by Liberty Mutual's policy or as implied by law.

10  ### ELEVENTH AFFIRMATIVE DEFENSE

11  To the extent that coverage may be found to exist under the policy issued by Liberty

12  Mutual, Liberty Mutual may be entitled to contribution, set-off, indemnification, apportionment, or

13  other relief from plaintiff and/or from any other insurer.

14  ### TWELFTH AFFIRMATIVE DEFENSE

15  To the extent that plaintiff failed to mitigate, minimize, or avoid any damages she

16  allegedly sustained, any potential recovery against Liberty Mutual must be reduced by the amount

17  attributable to such failure.

18  ### THIRTEENTH AFFIRMATIVE DEFENSE

19  The causes of action set forth in the complaint are barred by the applicable statutes of

20  limitations, including, but not limited to, California Code of Civil Procedure §§ 337, 338, 339, 340

21  and 343.

22  ### FOURTEENTH AFFIRMATIVE DEFENSE

23  Liberty Mutual reserves the right to assert additional affirmative defenses that may be

24  appropriate as may be determined by further information, including, but not limited to, that

25  obtained through discovery.

26  / / /

27  / / /

28

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

27266

- 3 -

**Defendant Liberty Mutual Fire Insurance Company's Answer To Plaintiff's Complaint For Breach Of Contract and Breach Of the Covenant Of Good Faith and Fair Dealing**

1     WHEREFORE, Liberty Mutual prays for judgment as follows:

2     1. That plaintiff take nothing by her complaint;

3     2. For costs of suit incurred herein; and

4     3. For such other and further relief as the Court deems proper.

5

6     Dated: February 28, 2008                    McCURDY & FULLER, LLP

7

8

9                                                 KEVIN G. McCURDY
10                                                MARYAM GILAK
                                                  Attorneys for Defendant
11                                                LIBERTY MUTUAL FIRE INSURANCE
                                                  COMPANY
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Liberty Mutual Fire Insurance Company's Answer To Plaintiff's Complaint For Breach Of
Contract and Breach Of the Covenant Of Good Faith and Fair Dealing

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

1

2

3

**PROOF OF SERVICE**
*Gega Saenz v. Liberty Mutual Fire Insurance Company, et al.*
**Superior Court of California, County of Alameda**
**Case No. HG08366535**

4      I am a citizen of the United States. My business address is 4300 Bohannon Drive, Suite
240, Menlo Park, California 94025. I am employed in the county of San Mateo where this service

5    occurs. I am over the age of 18 years, and not a party to the within cause. I am readily familiar
with my employer's normal business practice for collection and processing of correspondence for

6    mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the

7    U.S. Postal Service the same day as the day of collection in the ordinary course of business.

8      On the date set forth below, following ordinary business practice, I served a true copy of
the foregoing document(s) described as:

9

10     **DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY'S ANSWER**
**TO PLAINTIFF'S COMPLAINT FOR BREACH OF CONTRACT AND BREACH**
**OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

11

Addressed to the following recipients:

12

13    Gary S. Rose, Esq.
Heather E. Gibson, Esq.
Flynn, Rose & Perkins
14    59 North Santa Cruz Avenue, Suite Q
Los Gatos, CA 95030
15    Phone: (408) 399-4566
Fax: (408) 399-6683
16    **(Attorneys for *Plaintiff*)**

17       ____ (BY FAX) by transmitting via facsimile the document(s) listed above to the fax number(s)
set forth below, or as stated on the attached service list, on this date before 5:00 p.m.
18

19     _X_ (BY MAIL) I caused such envelope(s) with postage paid thereon fully prepaid to be placed
in the United States mail at Menlo Park, California.

20

____ (BY PERSONAL SERVICE) I caused such envelope(s) to be delivered by hand on this
21    date to the offices of the addressee by 5:00 p.m.

22       ____ (BY OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an overnight
delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to
23    be served.

24

_X_ (State) I declare under the penalty of perjury under the laws of the State of California that
25    the above is true and correct.

26     Executed on February 28, 2008, at Menlo Park, California

27

28                                                 Lena S. Nielsen

27309                                    - 2 -
**Proof Of Service**

MCCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

1   KEVIN G. McCURDY (SBN 115083)
    MARYAM GILAK (SBN 218325)
2   McCURDY & FULLER LLP
    4300 Bohannon Drive, Suite 240
3   Menlo Park, California 94025
    Telephone: (650) 618-3500
4   Facsimile: (650) 618-3599
    E-mail:  kevin.mccurdy@mccurdylawyers.com
5            maryam.gilak@mccurdylawyers.com

6   Attorneys for Defendant
    LIBERTY MUTUAL FIRE INSURANCE
7   COMPANY

8

9                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                     IN AND FOR THE COUNTY OF ALAMEDA

11  GEGA SAENZ,                                CASE NO. HG08366535

12                  Plaintiff,
                                               DEFENDANT LIBERTY MUTUAL
13          v.                                 FIRE INSURANCE COMPANY'S
                                               NOTICE OF FILING NOTICE OF
14  LIBERTY MUTUAL FIRE INSURANCE              REMOVAL
    COMPANY, and DOES 1 through 20,
15  inclusive,

16                  Defendants.

17

18          **TO THE CLERK OF THE ABOVE ENTITLED COURT AND TO PLAINTIFF**

19  **AND HER ATTORNEYS OF RECORD:**

20          PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, defendant

21  Liberty Mutual Fire Insurance Company did, on February 28, 2008, file a Notice of Removal in

22  the United States District Court for the Northern District of California, a copy of which is attached

23  hereto, and that said matter shall proceed hereafter in the United States District Court for the

24  Northern District of California.

25          PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. § 1441(e), the filing of

26  the notice of removal, together with this notice, effects the removal of this complaint, and the

27  above-captioned Court is requested to proceed no further unless and until the case is remanded to

28  the Superior Court.

27258                                          - 1 -
    Defendant Liberty Mutual Fire Insurance Company's Notice Of Filing Notice Of Removal

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

1   Dated: February 28, 2008                    McCURDY & FULLER LLP

2

3

4                                               KEVIN G. McCURDY
                                                MARYAM GILAK
5                                               Attorneys for Defendant
                                                LIBERTY MUTUAL FIRE INSURANCE
6                                               COMPANY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27258                          - 2 -
Defendant Liberty Mutual Fire Insurance Company's Notice Of Filing Notice Of Removal

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

**PROOF OF SERVICE**
*Gega Saenz v. Liberty Mutual Fire Insurance Company, et al.*
**Superior Court of California, County of Alameda**
**Case No. HG08366535**

I am a citizen of the United States. My business address is 4300 Bohannon Drive, Suite 240, Menlo Park, California 94025. I am employed in the county of San Mateo where this service occurs. I am over the age of 18 years, and not a party to the within cause. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served a true copy of the foregoing document(s) described as:

**DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY'S NOTICE OF FILING NOTICE OF REMOVAL**

Addressed to the following recipients:

Gary S. Rose, Esq.
Heather E. Gibson, Esq.
Flynn, Rose & Perkins
59 North Santa Cruz Avenue, Suite Q
Los Gatos, CA 95030
Phone: (408) 399-4566
Fax: (408) 399-6683
**(Attorneys for *Plaintiff*)**

_____ (BY FAX) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, on this date before 5:00 p.m.

__X__ (BY MAIL) I caused such envelope(s) with postage paid thereon fully prepaid to be placed in the United States mail at Menlo Park, California.

_____ (BY PERSONAL SERVICE) I caused such envelope(s) to be delivered by hand on this date to the offices of the addressee by 5:00 p.m.

_____ (BY OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

__X__ (State) I declare under the penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 28, 2008, at Menlo Park, California

Lena S. Nielsen

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

27309                                    - 2 -
**Proof Of Service**

C-08-1205 EMC

**CIVIL COVER SHEET**

§ JS 44 (Rev. 12/07) (cand rev 1-16-08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a)  PLAINTIFFS**

Gega Saenz

**DEFENDANTS**

Liberty Mutual Fire Insurance Company

**(b)** County of Residence of First Listed Plaintiff  Alameda
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Gary S. Rose, Esq., Heather E. Gibson, Esq.
Flynn, Rose & Perkins
59 North Santa Cruz Avenue, Suite Q
Los Gatos, CA 95030  Phone: (408) 399-4566

Attorneys (If Known)

Kevin G. McCurdy, Esq., Maryam Gilak, Esq.
McCurdy & Fuller LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025  Phone: (650) 618-3500

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [ ] 2  U.S. Government Defendant
- [X] 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)           and One Box for Defendant)

|                          | PTF | DEF |                                                         | PTF | DEF |
|--------------------------|-----|-----|---------------------------------------------------------|-----|-----|
| Citizen of This State    | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [X] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | [ ] 861 HIA (1395ff) | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | [ ] 892 Economic Stabilization Act |
| | | | [ ] 740 Railway Labor Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 790 Other Labor Litigation | | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 791 Empl. Ret. Inc. | [ ] 870 Taxes (U.S. Plaintiff | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | Security Act | or Defendant) | Act |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 900 Appeal of Fee |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | 26 USC 7609 | Determination |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities – | [ ] 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | to Justice |
| | [ ] 446 Amer. w/Disabilities – | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – | | [ ] 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | [ ] 440 Other Civil Rights | | [ ] 465 Other Immigration | | |
| | | | Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- [ ] 1  Original Proceeding
- [X] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from another district (specify)
- [ ] 6  Multidistrict Litigation
- [ ] 7  Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332; 28 U.S.C. § 1441(b)

Brief description of cause:
Breach of contract and breach of the covenant of good faith and fair dealing.

**VII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  Upon information
and belief in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes [X] No

**VIII. RELATED CASE(S) IF ANY**  PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)
- [X] SAN FRANCISCO/OAKLAND
- [ ] SAN JOSE

DATE  2 · 28 · 08

SIGNATURE OF ATTORNEY OF RECORD